RUTHVEN CONSOLIDATED SCHOOL DISTRICT and Ruthven-Ayrshire Community School District, Appellees,

v.

EMMETSBURG COMMUNITY SCHOOL DISTRICT, Laurens-Marathon Community School District, and Ayrshire Consolidated School District, Appellants.

No. 85–752.

Supreme Court of Iowa.

Feb. 19, 1986.

Stephen F. Avery, of Cornwall, Avery, Bjornstad & Scott, Spencer, for appellants.

Redge O. Berg, Spencer, for appellees.

Considered by REYNOLDSON, C.J., and HARRIS, McGIVERIN, SCHULTZ, and WOLLE, JJ.

HARRIS, Justice.

This declaratory judgment action seeks a determination that defendants were not "school districts affected by the organization" of a new school district. The answer will control whether the two defendant school districts can participate in a proceed-

ing to divide the assets and liabilities of a former district. A preliminary question is whether necessary administrative remedies were exhausted. We affirm in part, reverse in part and remand.

A former school district, the Ayrshire Consolidated School District, went out of existence and its area was divided among three adjoining districts. The dissolution of the district was effected by a petition filed by the Ruthven Community School District, which was located to the north. The new district became known as Ruthven-Ayrshire Community School District and included 33.5 sections of land from the old Ayrshire district. These 33.5 sections carried a valuation of $19,926,273. The new district received 105 of the 145 pupils who had attended the Ayrshire district.

The Emmetsburg Community School District, to the northeast, received 34.25 sections of land from the Ayrshire district, carrying a valuation of $20,130,148. Thirty-two of the 145 Ayrshire pupils were assigned to Emmetsburg. The other 2.75 sections of the Ayrshire land, valued at $1,521,013, were assigned to the Laurens-Marathon Community School District, to the south. Laurens-Marathon received eight of the Ayrshire pupils.

It became appropriate and necessary to divide the assets and liabilities of the defunct Ayrshire district under Iowa Code section 275.29 (1983).[1] The board of the newly formed Ruthven-Ayrshire district met for that purpose on July 7, 1983 with the boards of the defunct Ayrshire and Ruthven districts.

Representatives of the Emmetsburg and Laurens-Marathon districts appeared at the meeting and sought to participate in discussions on dividing the assets and liabilities of the defunct districts. These efforts were rebuffed on the claim that neither Emmetsburg nor Laurens-Marathon was an "affected" school district within the contemplation of section 275.29.

Following that meeting the Emmetsburg and Laurens-Marathon districts sought arbitration under Iowa Code section 275.30.[2] This effort precipitated this suit in which the Ruthven-Ayrshire and the defunct Ruthven districts sought a declaratory judgment establishing that the defendant schools were not "affected" school districts entitled to participate in the proceedings to divide the assets and liabilities.

It was a two-issue trial. The Emmetsburg and Laurens-Marathon districts contended the action was inappropriate because the plaintiff districts failed to exhaust their administrative remedies before the department of public instruction. They also contended they were affected school districts under section 275.29. The trial court resolved both issues in favor of the plaintiff districts. Emmetsburg and Laurens-Marathon then brought this appeal.

I. Few rules are better established or more widely recognized than the one which serves as keystone for administrative law. In *City of Des Moines v. Des*

---

1. Chapter 275 provides two schemes to divide assets and liabilities of a former school district upon reorganization. Under section 275.28, not implemented here, a plan for school reorganization may include a plan for such a division. Section 275.29 provides:

   Between July 1 and July 20, the board of directors of the newly formed community school district shall meet with the boards of all the old districts or parts of districts affected by the organization of the new school corporation for the purpose of reaching joint agreement on an equitable division of the assets of the several school corporations or parts thereof and an equitable distribution of the liabilities of the affected corporations or parts thereof.

2. Section 275.30 provides:

   If the boards cannot agree on such division and distribution, the matters on which they differ shall be decided by disinterested arbitrators, one selected by each board having an interest therein, and if the number thus selected is even, then one shall be added by the area education agency administrator. The decision of the arbitrators shall be made in writing and filed with the secretary of the new corporation, and any party to the proceedings may appeal therefrom to the district court.... Such appeal shall be tried in equity and a decree entered determining the entire matter, including the levy, collection, and distribution of any necessary taxes.

*Moines Police Bargaining Unit Association,* we stated it as follows:

> While the existence of another remedy does not preclude a court from granting declaratory relief, the relief is not appropriate and must be denied where there is a complete remedy otherwise provided by law that is intended to be exclusive.

360 N.W.2d 729, 731 (Iowa 1985). Under the rule exhaustion questions are resolved by a two-step analysis: Is an administrative remedy provided? Is it intended to be exclusive? *Rowen v. LeMars Mutual Insurance Co.,* 230 N.W.2d 905, 909 (Iowa 1975).

An administrative remedy has been provided to resolve the question disputed here. Iowa Code section 17A.9 (1983) (administrative procedure act) mandates that each agency

> provide by rule for the filing and prompt disposition of petitions for declaratory rulings as to the applicability of any statutory provision, rule or other written statement of law or policy, decision or order of the agency. Rulings disposing of petitions have the same status as agency decisions or orders in contested cases.

This provision has been called "the agency counterpart of the judicial declaratory judgment procedures." Bonfield, *The Iowa Administrative Procedure Act: Background, Construction, Applicability, Public Access to Agency Law, The Rulemaking Process,* 60 Iowa L.Rev. 731, 822–23 (1975). Acting on this mandate the department of public instruction established procedures for declaratory rulings. 670 Iowa Admin.Code §§ 53.1–53.3. The first step for an exhaustion requirement is satisfied.

But a legislative intent is also required, for the second step, that the administrative procedure be exclusive. We agree with the trial court that this step was not satisfied. It is readily apparent that the legislature intended that disputes concerning the division of assets and liabilities must progress, not to the department, but, under section 275.30, directly to arbitration and thereafter directly to court.

The trial court correctly decided its authority to consider the petition was not thwarted for lack of exhaustion of an administrative remedy.

II. Upon our de novo review of the underlying question we set two matters aside from our consideration. Although the plaintiff districts contend otherwise neither an amendment to the statutory definition, effective subsequent to this litigation, nor the testimony of an expert concerning legislative intent can be considered.

After this dispute arose Iowa Code section 275.1 was amended to add definitions, including:

> 3. *"School districts affected"* means the school districts named in the reorganization petition whether a school district is affected in whole or in part.

1984 Iowa Acts ch. 1078, § 1.

The parties agree that the amendment was not effective for this litigation. They do however dispute whether the later amendment sheds light on prior legislative intent. It is a frequent issue, likely to arise in any statutory interpretation case where the statute has been amended after the litigation arose.

The rule is easily stated. A statutory amendment usually changes the law, though there are exceptions where minor details are changed in such a way as to cast light on the legislature's earlier intent. *Slockett v. Iowa Valley Community School District,* 359 N.W.2d 446, 448 (Iowa 1984). Although it is regularly asserted that a change is minor and merely reflects what the legislature intended all along, exceptions to the general rule are rare. Most statutes, including statutes of amendment, are prospective, not retrospective. The rule outlining the exception is too often cited. Regularly, though improperly, it is offered as a justification to bolster an interpretation already reached. Courts should be wary about allowing anything outside the judicial process to affect pending litigation. *Id.*

■ It is not demonstrated that the statutory definition adopted as an amendment here falls within the exception. It therefore has no application. We do not suggest whether or not its application would change the outcome.

■ III. To support their interpretation the plaintiff boards offered the testimony of Guy Gahn, a consultant with the department of public instruction. Mr. Gahn stated he drafted "about all" of the legislation which included the amendment. His testimony concerning the meaning and purpose of that legislation was excluded by the trial court. The ruling was correct.

■ In common with most states we will not consider a legislator's private interpretation of the statute, even if the legislator was actively involved in drafting and enacting the legislation. *Iowa State Education Association v. Public Employment Relations Board*, 269 N.W.2d 446, 448 (Iowa 1978). *See* 2A Sutherland, *Statutes and Statutory Construction* § 48.16, at 338 (Sands 4th Ed.1984). Contrary to plaintiffs' contention we see even less reason, not more, for admitting the testimony of an administrative expert than that of a legislator.

We have summarized the polestar of statutory interpretation as follows:

In construing statutes the court searches for the legislative intent as shown by what the legislature said rather than what it should or might have said.

Iowa R.App.P. 14(f)(13). Our steadfast adherence to this rule is prompted by a separation of powers principle. Pending litigation should be absolutely immune from changes wrought by political process. We have many times said it is the prerogative of the legislature, acting within the reach of the constitution, to declare what the law shall be, but it is for the courts to declare what the law is. *Slockett*, 359 N.W.2d at 448.

IV. There is force to arguments on both sides of the base issue: whether defendants are districts affected by the reorganization of the new district within the meaning of section 275.29. Plaintiffs contend that "affected district" is a term of art in school reorganization. According to their view a district is not "affected" unless it, or a part of it, lies within the new district. They think this view was supported by the existing statutory definition of an "affected district" for purposes of a reorganization petition:

School districts affected or portion thereof shall be defined to mean that area to be included in the plan of the proposed new school district.

Iowa Code section 275.12(1) (1983).[3]

Earlier cases construing this language held that school districts not meeting this definition could not appeal a reorganization decision. *See Pleasant Hill Independent School District v. Board of Education*, 252 Iowa 1000, 1005, 109 N.W.2d 218, 221–22 (1961) (where no part of district was included in the proposed reorganization, district was not an "aggrieved party" and thus could not participate in appeal from department of public instruction's decision to approve reorganization); *State ex. rel. Schilling v. Community School District of Jefferson*, 252 Iowa 491, 498, 106 N.W.2d 80, 85 (1960) (where no territory was taken from school district, district "was not an affected district within the terms of the statutes and had no right of appeal").

Defendant school districts think the so-called "term of art" definition should not apply to a division of assets situation, but rather should be limited to determining what districts are affected by the inclusion of territory in the establishment of a new district. They argue they are in point of actual fact very much and very directly affected by how the $106,320.75 in assets of the old Ayrshire district are to be divided. They point out that land going from the old Ayrshire district to the newly-formed Ruthven-Ayrshire Community School District contributed less than half

---

3. This language was deleted from section 275.12 when the later statutory definition, previously discussed, was enacted in 1984. *See* 1984 Iowa Acts ch. 1078, § 6.

the real estate taxes to the old district. And they point out the anomaly that would occur if liabilities, rather than assets, were being divided.

 We think the 1983 Code definition of affected districts, appearing as it did in the section (§ 275.12) relating to petitions for school reorganizations, was not intended to apply to disputes concerning division of assets and liabilities. Rather that section and our cases previously mentioned (*Pleasant Hill School District* and *State ex. rel. Schilling*) were grounded on a different concern, one peculiar to school reorganizations. Reorganization of school districts is in the public interest. Neighboring school districts frequently covet the same territory. A neighboring district should not qualify as "affected," thus making it eligible to wreak havoc on a reorganization plan merely because it has designs on all or part of the same territory.

It is quite a different matter to say a school district is not affected by the distribution of assets when it is assigned the lion's share of the area of the former district which acquired those assets. It is significant that the term "school district affected," used earlier in the chapter is expanded in section 275.29 to "school district affected by the reorganization." It is true that the words are very similar. But if the legislature had intended for the same definition to apply in such contrasting situations it would be expected to use precisely the same words.

This is especially true because an identical definition would create a reasoned result in dealing with the formation of districts and an illogical and grossly unfair result when a school district is dissolved and it comes to a division of assets and, especially, liability. *See* Iowa Code section 275.31 ("If necessary to equalize such division and distribution, the board or boards may provide for the levy of additional taxes upon the property of any corporation or part of corporation and for the distribution of the same so as to effect such equalization.").

We conclude that the defendant districts were "affected by the organization" in question and therefore were entitled to participate in the proceedings to divide the assets of the Ayrshire district. The case is remanded for further proceedings in conformity with this opinion.

AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH INSTRUCTIONS.